NELLIE K. KLINE, on Behalf of Herself and All Other Owners of a Consolidated Mortgage Made by 277 MADISON AVENUE CORPORATION, Covering Premises Known as 273–277 Madison Avenue and 24–26 East Fortieth Street, Borough of Manhattan, City of New York, Plaintiff, *v.* 275 MADISON AVENUE CORPORATION and Others, Defendants.*

Supreme Court, New York County, November 16, 1933.

* See, also, *Matter of Nemerov* (149 Misc. 797).

*White & Case* [*Lowell Wadmond* of counsel], for the 275 Madison Avenue Corporation, in support of motion.

*Leon London,* for the plaintiff, opposed.

*Weil, Gotshal & Manges* [*William K. Laws* of counsel], for the New York Guaranteed Mortgage Protection Corporation.

FRANKENTHALER, J. To the extent that this motion seeks to dismiss the amended complaint as insufficient the affidavits filed by the moving party must be disregarded. The plaintiff is the owner of an undivided interest in the bond and mortgage held by Title Guarantee and Trust Company "as depositary and agent" and may, therefore, sue in equity as a partial assignee of the bond and mortgage, joining the owners of the balance of the mortgage as parties defendant. The proper remedy for failure to join necessary parties is, however, not a motion to dismiss the complaint but rather an application to correct the complaint under rule 102 of the Rules of Civil Practice. (*McKnight* v. *Bank of New York & Trust Co.,* 254 N. Y. 417, 422.) In so far as the dismissal of the amended complaint for insufficiency is applied for, the motion must, therefore, be denied. The affidavits filed by the movant may, however, be considered in support of that branch of the motion which seeks to vacate the order appointing temporary receivers. They establish without contradiction that prior to the time that the plaintiff purchased an undivided interest in the bond and mortgage from Title Guarantee and Trust Com-

pany the latter had conferred upon Bond and Mortgage Guarantee Company the exclusive right, as agent of Title Guarantee and Trust Company under irrevocable appointment to enforce the bond and mortgage as it might deem necessary without interference by Title Guarantee and Trust Company. In return for this irrevocable and exclusive agency Bond and Mortgage Guarantee Company issued a policy to Title Guarantee and Trust Company guaranteeing payment of interest due under the bond and mortgage at a specified rate and also payment of the principal. The certificate issued to the plaintiff by Title Guarantee and Trust Company evidenced an assignment of an undivided interest in said policy as well as in the bond and mortgage. Under these circumstances it is clear that the plaintiff, as assignee of Title Guarantee and Trust Company, is bound by the provisions of the contract between the latter and Bond and Mortgage Guarantee Company pursuant to which the policy was issued. There is no showing that the irrevocable and exclusive agency referred to has been rescinded or revoked, even if it be assumed that the plaintiff, owning less than two per cent of the bond and mortgage, could rescind, without the participation of the owners of the balance of the bond and mortgage, except by obtaining the decree of a court of equity in an action for such relief. It follows that this action is being maintained by one who, on the undisputed facts, has no right to prosecute the same. Attention should also be called to the fact that the order of Mr. Justice JOHNSTON, dated August 2, 1933, enjoined the holders of mortgage participation certificates guaranteed by Bond and Mortgage Guarantee Company " from in any way interfering with the Superintendent of Insurance of the State of New York * * * in his * * * possession, control and management of the property of said corporation." To permit the plaintiff, the holder of such a participation certificate, to prosecute an action to foreclose the mortgage would constitute a violation of this order since the exclusive and irrevocable right to enforce the mortgage constitutes property of the Bond and Mortgage Guarantee Company which is now in the possession, control and management of the Superintendent of Insurance. The order appointing temporary receivers must, therefore, be vacated. The motion is granted to the extent of vacating the *ex parte* order appointing the temporary receivers and otherwise denied, with leave to answer within ten days from the service of a copy of this order with notice of entry upon payment of ten dollars costs.

Opinion on reargument, December 11, 1933.

FRANKENTHALER, J. By a previous decision of the court a motion to vacate an order appointing receivers in foreclosure was

granted upon the application of the defendant, 275 Madison Avenue Corporation (149 Misc. 747). Plaintiff now moves for reargument, relying upon this court's holding in *Matter of Central Hanover Bank & Trust Co.* (149 Misc. 488).

In the *Central Hanover Bank Case* (*supra*) the court granted a motion by that institution for permission to take over and control the administration and enforcement of a bond and mortgage owned by it and guaranteed by New York Title and Mortgage Company. The court also held that the bank would not, by the mere act of availing itself of the permission thus given, forfeit such rights as it might otherwise possess upon the guaranty. The rationale of the decision was that the irrevocability of the agency to control and enforce the bond and mortgage to the exclusion of the bank which owned them, conferred upon the guarantor by the provisions of the guaranty, was to continue only as long as the guarantor continued to perform its guaranty. Accordingly, the court decided that defaults upon the guaranty terminated the irrevocability of the exclusive agency and entitled the principal, the owner of the bond and mortgage, to revoke said exclusive agency. There was no holding that the exclusive agency itself expired *automatically* upon the guarantor's default, as by conditional limitation. The effect of non-performance by the guarantor is merely to make revocable that which was previously irrevocable. Until the right to revoke is exercised, however, the guarantor remains the exclusive agent of the mortgagee with the sole right to enforce the bond and mortgage. In the case cited the option to revoke was actually sought to be availed of by the Central Hanover Bank, as owner of the entire bond and mortgage. In the instant case, on the contrary, no attempt has been made to revoke the exclusive agency of the Bond and Mortgage Guarantee Company which issued the guaranty here involved. The plaintiff brought the present action in complete disregard of the fact that said company, under the terms of the guaranty to which his undivided interest is subject, had the exclusive right to maintain an action in foreclosure. (See first paragraph of guaranty after caption " premium and terms of guarantee " and paragraphs 1 and 4 of " conditions " following the words " the insured is bound.") Even the provision in the certificate issued to plaintiff by Title Guarantee and Trust Company, which empowers the latter to take any action it might deem necessary or desirable in order to enforce the bond and mortgage and to protect the mortgage security is rendered ineffectual by the agreement entered into between that company and Bond and Mortgage Guarantee Company, pursuant to which the latter issued its guaranty.

Were plaintiff the owner of the *entire* bond and mortgage (as was the Central Hanover Bank in the case previously referred to), it may be that he could sue to foreclose without formal notification to the Bond and Mortgage Guarantee Company of an election to revoke its exclusive agency. The difficulty here is that plaintiff's interest in the bond and mortgage represents less than two per cent of the mortgage indebtedness. Can a person with so small an interest revoke by himself the agency conferred upon the guaranty company? Let us assume that the owners of the remainder of the bond and mortgage, representing more than ninety-eight per cent of the indebtedness, desire the exclusive agency to continue. Are the wishes of less than two per cent to overcome those of more than ninety-eight per cent? What is to be the position of the Bond and Mortgage Guarantee Company if holders of part of a bond and mortgage attempt to revoke the agency and holders of another part or of the entire balance desire the agency to continue? Whose wishes are to prevail? Obviously, the owner of a portion of the bond and mortgage does not possess all the rights of an owner of the whole bond and mortgage. Thus, it is well established that an option to accelerate principal for default in interest may not be exercised by the owner or owners of part of a bond and mortgage, but may be taken advantage of only by the owners of the entire bond and mortgage. (*Cresco Realty Co.* v. *Clark*, 128 App. Div. 144; *Shaw* v. *Wellman*, 59 Hun, 447; *Corporate Investing Co.* v. *Gracehull Realty Co.*, 157 App. Div. 259; *Getty, Inc.*, v. *Cauchois*, 141 id. 443; *Beach* v. *Tangier Hotel Co., Inc.*, 110 Misc. 41.) If owners of a portion of a bond and mortgage could act as if they owned it all, how large would the requisite portion have to be? Manifestly, less than two per cent would be much too small an interest to confer upon its owner all the rights of the possessor of an entire bond and mortgage. Where would the line be properly drawn? The impossibility of determining what percentage, less than all, of the owners of a bond and mortgage may exercise the rights which go with ownership of the entire bond and mortgage convinces the court that the rule in respect to the exercise of the option of acceleration, referred to above, is equally applicable to the exercise of any other rights possessed by a mortgagee. This does not mean, however, that the holder of part of a bond and mortgage is left without a remedy. He may avail himself of the provisions of chapter 745 of the Laws of 1933, which permits holders of two-thirds in principal amount of a bond and mortgage to effect a plan of reorganization, subject to the approval of the court. This is, moreover, not the only course open to him. For example, he

may commence an appropriate action or proceeding to obtain a judicial decree revoking the exclusive agency previously conferred upon the guarantor and permitting the institution of foreclosure proceedings. If, in such action or proceeding, other owners of portions of the bond and mortgage oppose the relief sought, the court may, if convinced that the opposition is interposed unjustifiably and in bad faith, and perhaps for other reasons, grant the decree applied for.

It is unnecessary to consider at this time the extent and limits of the court's power to grant relief to owners of part of a bond and mortgage where owners of the balance resist and oppose the same. Nor is there any present need to determine whether the provisions of section 195 of the Civil Practice Act, permitting representative actions, apply to cases coming within the scope of section 194 of the Civil Practice Act and thus dispense with the necessity of joining as parties to the action all the owners of undivided interests in the bond and mortgage. Suffice it for the present to state that one owning less than two per cent of the mortgage indebtedness may not, by himself and without judicial sanction, revoke or treat as revoked the exclusive agency vested in the guarantor of the bond and mortgage and commence a foreclosure action in which the guarantor is not made a party and in which the complaint does not even mention the existence of the agency, much less seek its revocation. It is well to note that in the instant case the foreclosure action was instituted at a time when a tentative plan of reorganization had been adopted and a meeting of certificate holders called by New York Guaranteed Mortgage Protection Corporation for the purpose of obtaining their views. At the meeting holders of certificates in the principal amount of $795,000 voted in favor of a resolution that the appointment of receivers be vacated and the foreclosure action stayed pending the negotiations looking toward reorganization. The only dissenting vote was cast on behalf of the plaintiff in this action. It is easy to see the chaos and the irreparable damage to plans of reorganization which would result if the owner of part of a bond and mortgage, however small, were to be allowed all the rights of the owner of an entire bond and mortgage and if the procedure adopted by the plaintiff here were to receive judicial approval.

A few words may be added in connection with the decision in the *Central Hanover Bank Case* (*supra*), though perhaps not strictly pertinent to the present motion. All that was held in the *Central Hanover* case as to the survival of the guaranty was that the revocation of the guarantor's exclusive agency and the enforcement of the bond and mortgage by the mortgagee would not,

*in themselves*, release the guarantor from whatever liability it was otherwise under by virtue of its guaranty. The guarantor would, however, still possess exactly the same rights as if it had guaranteed the bond and mortgage without providing that it was to have the sole right to control their enforcement. The ordinary principles of the law of suretyship and guaranty would still apply and the mortgagee would be required to observe those principles or take the risk of discharging the guarantor. Nothing was said in the opinion in the *Central Hanover* case which could even give rise to an inference that the mortgagee might do whatever it desired in enforcing the bond and mortgage without discharging the guarantor.

The motion for reargument is granted but the original disposition is adhered to.