In the Matter of the Application of the BROOKLYN TRUST COMPANY (PRUDENCE BONDS CORPORATION, FIFTH AVENUE HOTEL).

Supreme Court, New York County, September 4, 1936.

*Cullen & Dykman* [*Ralph W. Crolly* and *Edward Endelman* of counsel] for the petitioner Brooklyn Trust Company.

*Hoffman & Hoffman* [*Samuel Hoffman* of counsel], for the certificate holders in support of the application.

*Jacob A. Freedman*, for the cert ficate holders in support of the application.

*Newman & Bisco*, for the depositary Manufacturers Trust Company.

*George C. Wildermuth*, for the trustees of the Prudence Bonds Corporation.

*Kaufman, Weitzner & Celler* and *Thomas Cradock Hughes* [*Isadore Polier* and *Irving Rosan* of counsel], for the trustees of The Prudence Company, Inc.

*Delafield, Thorne & Marsh* [*Eugene Blanc* of counsel], for the Prudence certificate group.

*Pollock & Nemerov* [*Joseph Nemerov* and *Maurice J. Dix* of counsel], for certain certificate holders.

*Rapaport Bros.* [*Robert L. Garson* of counsel], for certa'n certificate holders.

*Weinberg & Weinberg* [*Reuben Weinberg* and *Leon London* of counsel], for certain certificate holders.

*Archibald Palmer* [*H. D. Glicksman* of counsel], for certain certificate holders.

CHURCH, J. This is a proceeding brought by Brooklyn Trust Company for the appointment under section 112 of the Real Property Law, of a substituted grantee of certain alleged powers in trust reserved by Prudence Bonds Corporation. The petitioner Brooklyn Trust Company has title, in a fiduciary capacity, to certain participation certificates in a bond and mortgage affecting the above premises located in the borough of Manhattan, city of New York. Similar motions have been made affecting five other properties situated in the borough of Manhattan, city of New York.

Prudence Bonds Corporation was a business corporation organized under the Stock Corporation Law. Prudence Company, Inc., the guarantor of payment of the participation certificates hereinafter described, was a corporation organized under the Banking Law of the State of New York. The stock of Prudence Bonds Corporation and Prudence Company, Inc., was wholly owned by New York Investors, Inc. The procedure adopted by Prudence Bonds Corporation and Prudence Company, Inc., in selling these participation certificates to the public in these cases was substantially this:

Prudence Company, Inc., would acquire bonds and mortgages or a consolidated bond and mortgage on certain premises. Prudence Company, Inc., would then assign the same to Prudence Bonds Corporation. Prudence Bonds Corporation would then, either by formal assignment or a letter of transmittal, assign or deliver to a trust company the bond and mortgage, insurance policies and other instruments of title. The depositary trust company would then authenticate the issuance by Prudence Bonds Corporation of participation certificates in this bond and mortgage, the payment of which was guaranteed by Prudence Company, Inc. In due course of time these participation certificates issued by Prudence Bonds Corporation, authenticated by the depositary and guaranteed by Prudence Company, Inc., were sold to the public. Thereafter

134

the obligor on the bond and mortgage defaulted and Prudence Company, Inc., also defaulted in fulfilling the terms of its guaranty.

In the case of the particular issue involved herein there was no formal assignment of title in and to the bond and mortgage; the instruments were merely delivered by Prudence Bonds Corporation to the depositary trust company, record title to the bond and mortgage remaining in Prudence Bonds Corporation. In the letter of transmittal there was some reference made to another deposit agreement affecting another property. The letter might be construed as a vague attempt to incorporate by reference the terms of this other agreement, *mutatis mutandis*. Any attempt, however, to reconcile the other agreement with the certificates which were later issued by Prudence Bonds Corporation in this issue leads to inevitable failure and a keen realization of the hopeless inadequacy of protection afforded to the certificate holders by Prudence Bonds Corporation and Prudence Company, Inc. The certificates issued on this property made no reference whatever to any deposit agreement. The certificates differ radically from the form of the certificates prescribed in the other deposit agreement; this other deposit agreement contained no provision whatever for the eventuality of a default by the guarantor.

The certificates actually issued gave Prudence Bonds Corporation and/or Prudence Company, Inc., the right to take any action which it might deem necessary or desirable in order to enforce any of the provis ons of the bond and mortgage and to protect the mortgage security and in addition thereto gave Prudence Bonds Corporation the right in its discretion, with the consent of Prudence Company, Inc., to waive any condition or provision contained in the said mortgage. The certificates also gave Prudence Bonds Corporation the right to redeem prior to maturity. In this issue approximately $2,000,000 par amount of certificates were sold to the public.

By private arrangement between Prudence Bonds Corporation and Prudence Company, Inc., the bonds and mortgages in these cases were serviced by Prudence Company, Inc., the guarantor, and this servicing has continued since the latter's default in its guaranty.

Over two years ago Prudence Bonds Corporation filed its petition under section 77B of the Bankruptcy Act (U. S. Code, tit. 11, § 207) in the Federal court, Eastern District. Three trustees were appointed, the order of appointment containing the usual injunctive provisions prohibiting interference with the trustees. Prior to these 77B proceedings one of the depositaries, in a case (Hotel Taft) where Prudence Bonds Corporation had assigned title to the bond and mortgage to such depositary pursuant to the terms of a formal

deposit agreement, had, pursuant to such formal deposit agreement, revoked the authority of Prudence Bonds Corporation and/or Prudence Company, Inc., to act for the certificate holders and had instituted foreclosure proceedings in the State court. When appointed, the trustees of Prudence Bonds Corporation attempted to assert the injunctive provisions of the order of their appointment against this depositary; the depositary opposed such attempted assertion. The District Court sustained the trustees of Prudence Bonds Corporation, but on appeal the Circuit Court of Appeals reversed, holding that the property covered by the mortgage could not be included in any plan or plans for reorganization of Prudence Bonds Corporation. (*Matter of Prudence Bonds Corporation*, 79 F. [2d] 212.) That mortgage participation issue (Hotel Taft) then proceeded to reorganization in the State court foreclosure proceeding. Subsequent to this decision of the Circuit Court of Appeals above mentioned, Judge INCH, in the Eastern District Court, signed an order excluding all the certificate issues involved in these proceedings from the injunction prohibiting interference with the trustees of Prudence Bonds Corporation, the latter having stipulated that they would file no plans of reorganization of any of the certificate issues in the Prudence Bonds Corporation 77B proceeding. This paved the way for any action which might be taken for reorganization of these issues, either by a 77B proceeding instituted by an owner or mortgagor in the Federal court or by foreclosure and State court proceedings brought by or on behalf of the certificate holders. In passing, it may be noted that the trustees of Prudence Bonds Corporation do not oppose this present motion for the appointment of a substitute grantee of the powers in the trust allegedly held by Prudence Bonds Corporation.

Approximately nineteen months ago Prudence Company, Inc., the guarantor, was petitioned into 77B. Trustees were appointed, the order of appointment containing the usual injunctive provisions prohibiting interference with them. In one of the certificate issues guaranteed by Prudence Company, Inc. (*Matter of Westover, Inc.*), the owner-mortgagor had filed a plan of reorganization of his property under section 77B. The trustees of Prudence Company, Inc., filed a claim against the owner for the full amount of the mortgage which it had guaranteed. The District Court refused to allow this claim, and limited the trustees of Prudence Company, Inc., to the filing of a claim only in the amount of the certificates which were actually owned by Prudence Company, Inc. The Circuit Court of Appeals affirmed, holding that Prudence Company, Inc., not having any rights in the mortgage by way of subrogation after it had defaulted on its guaranty, was a creditor of the owner only

to the extent that it was a certificate holder. (*Matter of Westover, Inc.*, 82 F. [2d] 177.) Subsequent to this decision the District Court denied the application of the trustees of Prudence Company, Inc., to enforce the injunctive provisions in their favor in respect of the Hotel Taft certificate issue.

The two decisions of the Circuit Court of Appeals referred to *supra* indicate that neither Prudence Bonds Corporation nor Prudence Company, Inc., has such property interest in the bond and mortgage involved in this case as to justify the inclusion of this bond and mortgage in any 77B proceedings either of Prudence Bonds Corporation or Prudence Company, Inc. Despite these two decisions and despite the admitted default of Prudence Company, Inc., the trustees of the latter have continued in their control of the property involved in this application. Of the fifty-four certificate issues of Prudence Bonds Corporation, affecting fifty-four different properties, no real results, with a few minor exceptions, have been accomplished in the way of reorganizing such issues, since the only reorganization which can be effected in the Federal court is where a mortgagor and/or owner sees fit to file a 77B proceeding. In view of the fact that in many cases there are junior mortgages and the mortgages themselves are divided into senior and junior participations, the outlook for a successful 77B reorganization is dubious, and the net result of continuing the present status is to perpetuate the defaulting guarantor as servicing agent with little hope to the certificate holders of a successful reorganization.

A few points of narration remain: Subsequent to the institution of this instant application Brooklyn Trust Company made a motion in the Prudence Company, Inc., 77B proceeding for an order vacating the injunction prohibiting interference with the Prudence Company, Inc., trustees in respect of all the certificate issues in which it had acted as guarantor. On this motion a proposed order was drafted excluding all such certificate issues without prejudice to any determination as to the rights or liabilities of Prudence Company, Inc. The form of this order was approved by the attorneys for the trustees. The District Court, however, denied this motion without prejudice to a renewal thereof in respect of any particular certificate issue. No such motion has yet been made. In another motion, made in the Eastern District Court, an order has been entered permitting the Prudence Company, Inc., trustees, to institute foreclosure proceedings in the State court on notice to the certificate holders and further providing that, if the trustees did not institute foreclosure, any certificate holders or committee of certificate holders might apply for permission so to do on similar notice.

With this background of fact we come to the contention of the petitioner on this motion, which is briefly this: That Prudence Bonds Corporation reserved unto itself in this case certain powers in trust within the meaning of the New York statute defining powers in trust; that, under section 112 of the Real Property Law, the Supreme Court of the State of New York has jurisdiction, in view of the insolvency of Prudence Bonds Corporation and its legal inability to act as trustee, to appoint a substitute grantee of these powers in trust; that this appointment would violate no injunction in the 77B proceedings of Prudence Bonds Company because Judge Inch has excluded from such injunction any proceedings in respect of this particular issue. The motion is not opposed by the trustees of Prudence Bonds Corporation, but is opposed by the trustees of Prudence Company, Inc. The question as to whether the powers reserved by Prudence Bonds Corporation in this case constitute powers in trust within the meaning of sections 131 and 138 of the Real Property Law has been decided in this court by Mr. Justice FRANKENTHALER in the case of *Matter of New York Title & Mortgage Co.* (150 Misc. 488). In that case the court said (at p. 489): " In every case that the court is aware of, however, the guaranty company possesses authority to collect the principal and interest upon and enforce all the terms and provisions of the bond and mortgage, as well as to satisfy and discharge the mortgage in its own name. In some cases additional rights have been conferred, *e. g.*, to extend the bond and mortgage in the name of the guaranty company. These rights constitute ' powers ' within the meaning of section 131 of the Real Property Law, which defines a power as ' an authority to do an act in relation to real property, or to the creation or revocation of an estate therein, or a charge thereon, which the owner, granting or reserving the power, might himself lawfully perform.' They are ' special powers in trust ' under section 138 of the Real Property Law."

In the instant case, Prudence Bonds Corporation reserved the record title to the property; it reserved the right to " take any action which it may deem necessary or desirable in order to enforce any of the provisions of said bond and mortgage and to protect the mortgage security." It reserved the right in its discretion, with the consent of the guarantor, to " waive any condition or provision contained in said mortgage; postpone, extend or waive the payment of any installment of principal required by the terms of said mortgage; provided that nothing therein contained shall relieve the guarantor from paying this certificate in accordance with the terms thereof " (while this latter provision was deleted

from some of the certificates it definitely appears in others); it reserved the right to redeem the certificates prior to maturity.

The contention is made that these powers reserved by Prudence Bonds Corporation were not powers in trust but were mere agency powers revocable at will. In this case I find no power of revocation at will existing in any other person or party except that which exists in the Supreme Court to appoint a substitute grantee of powers where the original grantee is incapable of exercising them. Citations are offered of excerpts from decisions in which the rights of certain guaranty companies have been styled agency powers, but in some of those cases it clearly appeared that the guarantor was a primary debtor, which had merely made a promise to pay the certificate holder a definite amount at a definite time with a right of substitution of collateral, while in others the terms of the certificate or deposit agreement or the compulsion of an emergency conservator was the controlling factor.

The motion for the appointment of substituted grantees of powers in trust will, therefore, be granted, since (a) the powers reserved by Prudence Bonds Corporation were powers in trust which it is incapable of executing; (b) the certificate holders as a class are entitled to a representative to protect their interests; (c) the trustees of the defaulting guarantor are not, in my opinion, proper representatives of the certificate holders. The trustees necessarily represent adverse interests. On the one hand it is their duty to conserve the assets of the guarantor. On the other hand, they are presently the only representatives of all the certificate holders who have claims against the guarantor on its guaranties. In many of the cases, including this one, the guarantor actually owns certificates in its own name. There is actual conflict of interest in determining whether it is entitled to receive interest on the certificates owned by it until its default is remedied.

The decisions of the courts of this State and the Circuit Court of Appeals are in agreement on the proposition that default in the guaranty revokes or at least makes revocable the authority of the guarantor to represent certificate holders. As the court said in *Matter of People (Lawyers Title & Guar. Co.)* (265 N. Y. 20, at p. 26): "The agency ends when the agent no longer can act as it agreed to do unless the persons interested acquiesce in the new arrangements."

And again, in *Matter of People v. N. Y. Title & Mortgage Co.* (265 N. Y. 30, at p. 35): "The company agreed to pay the interest at the times specified and the insured agreed to give the company full control of the mortgage. When the company failed to do its part the mortgagee was almost of necessity required to assume the management and service of its property."

In the case last cited there was no express provision for revocation of the guarantor s authority in the event of its default, but the court said that the implication of such revocation on default was as plain as if the words were used.

And in the *Westover Case* (*supra*) the court said (at p. 180): " Although the Prudence Co., Inc., was given certain rights as agent to collect under the mortgage and deal with the mortgaged property, those agency rights were lost when it defaulted on its guaranty."

In commenting on the anomalous position of the Superintendent of Banks, who was designated as an emergency appointee to assume control of certain title companies, Mr. Justice FRANKENTHALER, in *Matter of Nemerov* (149 Misc. 797), said (at p. 806): " The court sees no reason why the Superintendent should remain in control of the underlying securities when the owners thereof elect to take over the management of such securities for their own benefit. The embarrassing position in which the Superintendent finds himself as a result of his statutory obligation to represent conflicting interests will be largely relieved if those owning collateral in the possession of the guarantee companies taken over by the Superintendent are granted the rights to which their ownership entitles them and are permitted to withdraw such collateral and deal with it as they see fit. In this manner the gigantic and stupendous problem which confronts the Superintendent at this time, by reason of his duty to administer a vast amount of collateral securing guaranties issued by the companies will be reduced and simplified to a very considerable extent and the Superintendent will be enabled to confine himself primarily to the problem of administering the assets belonging to the guaranty companies in their own right as distinguished from the collateral which they hold in trust for others."

(d) Neither Prudence Bonds Corporation nor Prudence Company, Inc., nor the certificate holders can reorganize any of these certificate issues in the District Court. The certificate holders are at the mercy o owners and/or mortgagors, who may see fit to file in 77B. In view of the extent of the default herein and the junior mortgage, it is extremely doubtful whether any equity is available for the owner mortgagor except the nuisance value of compelling resort to him in order to effectuate a 77B reorganization.

(e) There is a serious doubt in my mind as to the authority of the Prudence Company, Inc., trustees to foreclose a mortgage or reorganize in this court on behalf of bondholders after default in its guaranty. No such doubt exists in my mind in respect of the rights of a substitute grantee of the powers reserved for the ultimate benefit of the certificate holders.

As to the claim that the appointment herein wil entail considerable additional expense, I feel that this court is capable of protecting the certificate holders in that regard. The recent economical results achieved by the trustees appointed by Mr. Justice FRANKENTHALER is a sufficient answer to this contention. The trustees to be appointed herein are certainly not obliged to terminate the present servicing if, in their opinion, it is not economical or expedient to do so.

In some of the motions involved herein Prudence Bonds Corporation executed a formal deposit agreement. The existence of a deposit agreement does not affect the point at ssue in these motions — in fact, it indicates a further reason for the appointment. In those cases where there is a deposit agreement the trustees of Prudence Company, Inc., contend that, despite the deposit agreement, the terms of the certificates subsequently ssued control; that such certificates were 'nconsistent with the deposit agreement in that the certificates irrevocably gave Prudence Bonds Corporation and/or Prudence Company, Inc., the authority to act in relation to the mortgage; that no revocation of such authority can now be effected unless by the certificate holders themselves. The depositaries, on the other hand, claim that they have the right to revoke (some provisions of the deposit agreements would indicate that on default the authority of Prudence Company, Inc., ceased altogether), but they have taken no steps to effect such revocation, relying on the terms of the agreement which require action only upon the demand of at least thirty per cent of the certificate holders, and then only upon furnishing adequate security. Under this intolerable state of affairs it is the duty of the court, under its equity powers, to take steps to clear the air and to accomplish something for the certificate holders, which, by the terms of the certificates and under the agreement, it has the power to do.

Several minor points remain: Since the institution of this application belated efforts have been made to induce owners to file under 77B. In one of the issues it was stated that a corporation had been formed for the purpose of filing a petition under 77B. The probability of success of such a proceeding can scarcely be called optimistic. In any event, the District Court will pass upon the good faith and practicability of these manœuvers when proper application is made in the District Court by the trustees who are to be appointed herein. This case does not involve, as some have grimly foreboded, any conflict of jurisdiction. The Federal court and this court are alike interested primarily in the preservation of the right of the certificate holders. I am sure that the trustees to be appointed herein and the trustees of Prudence Company, Inc., will be able,

through mutual co-operation, to effect this result. I<sup></sup> appears to this court to be the only solution of an otherwise hopeless muddle. A pertinent example of the present confusion is found in the fact that at the present time one or more certificate holders, questioning the right of Prudence Company, Inc., trustees to take any further steps in re ation to this mortgage, have instituted a foreclosure action in this court, the success of which is doubtful in view of the decision of Mr. Justice FRANKENTHALER in *Kline* v. *275 Madison Ave. Corp.* (149 Misc. 747). If a 77B reorganization is not feasible or if it fails, as in this case it seems doomed to do, then the trustees to be appointed herein can reorganize in this court either through foreclosure or otherwise, where the certificate holders will not be hampered by the demands of 77B petitioners or junior mortgagees or junior partic pants, and yet where all who have a definite equity in the property can be protected.

Matter of Prudence Bonds Corporation (Brooklyn Trust Company, 27 West 72d St.).— This motion for the appointment of substituted grantees of powers in trust is granted, and Patrick J. Callahan, of No. 40 Front street, Rudolph Stand, of No. 160 Broadway, and Albert A. Friedlander are hereby appointed. The motions to dismiss are denied. See memorandum filed in motion No. 5210. Settle order.

Matter of Prudence Bonds Corporation (Brooklyn Trust Company, 130 West 49th St.).— The motion for the appointment of substituted grantees of powers in trust is granted, and James J. Dooling, of No. 40 Front street, James J. Mahoney, of No. 55 Oak street, and Saul S. Berzen, of No. 51 Chambers street, are hereby appointed. The motions to dismiss are denied. See memorandum filed in motion No. 5210. Settle order.

Matter of Prudence Bonds Corporation (Brooklyn Trust Company, 101 Central Park West).— The motion for the appointment of substituted grantees of powers in trust is granted, and John A. Nullan, of No. 225 Broadway, Thomas J. O'Reilly, of No. 51 Chambers street, and Thomas F. Howley, of No. 59 West Twelfth street, are hereby appointed. The motions to dismiss are denied. See memorandum filed in motion No. 5210. Settle order.

Matter of Prudence Bonds Corporation (Brooklyn Trust Company, 360 East 55th St.).— This motion for the appointment of substituted grantees of powers in trust is granted, and Frank Aranoff, of No. 84 William street, John J. O'Neil, of No. 1115 Broadway, and James H. Torrens, of No. 551 West One Hundred and Seventy-first street, are hereby appointed. The motions to dismiss are denied. See memorandum filed in motion No. 5210. Settle order.

Matter of Prudence Bonds Corporation (Brooklyn Trust Company, 983 Park Ave.).— This motion for the appointment of substituted grantees of powers in trust is granted, and John T. Dooling, of No. 37 West Forty-third street, Martin J. Kennedy, of No. 230 Park avenue, and Joseph Crandon, of No. 203 East Eighty-fifth street, are hereby appointed. The motions to dismiss are denied. See memorandum filed in motion No. 5210. Settle order.

Matter of Prudence Bonds Corporation (Brooklyn Trust Company, 24 Fifth Ave.).— This motion for the appointment of substituted grantees of powers in trust is granted and James McNally, of No. 32 Broadway, John J. Thaler of No. 402 West Fifty-first street, and Michael J. Kennedy, of No. 427 West Fifty-first street, are hereby appointed. See memorandum filed herewith. The motions to dismiss are denied. Settle order.